IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

        Plaintiff,

vs.                                                                 Civ. No. 07-00710 MV/WDS

THE BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF CATRON,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss [Doc. 8].
The Court has considered the motion, Plaintiff's response [Doc. 9] and Defendant's reply [Doc.
32], and being otherwise fully advised of the premises therein finds that the motion should be
**GRANTED** in part and **DENIED** in part for the reasons stated herein.

Also before the Court is Plaintiff's Motion for Preliminary Injunction [Doc. 16].  The
Court has considered this motion, Defendant's response [Doc. 31] and Plaintiff's reply [Doc. 39],
as well as Defendant's Motion to Strike or Alternatively to Disqualify [Doc. 23], and being
otherwise fully advised of the premises therein finds these motions are not well-taken and should
be **DENIED**.

## I.  BACKGROUND

In 1976 the Mexican gray wolf, or "lobo," was listed as endangered under the Endangered
Species Act ("ESA") in recognition that this subspecies of gray wolf was at risk of extinction.
Thereafter, the United States Fish and Wildlife Service ("FWS") began recovery efforts to save
the species.  Through a collaborative effort with Mexico, the United States agreed to establish a
bi-national captive breeding program for the purpose of saving the species and providing animals

for future reintroduction into the wild.  Between 1977 and 1980, only five Mexican wolves were captured in Mexico to establish the captive breeding program.  In 1982 the FWS approved the Mexican Gray Wolf Recovery Plan.  The plan recommended maintenance of the captive breeding program and re-establishment of a viable self-sustaining population of at least 100 wolves in the wild within the Mexican wolf's historic range.

The FWS designated the Gila and Apache National Forests as the first recovery area for the Mexican wolf, known as the Blue Range Wolf Recovery Area ("BRWRA").  The BRWRA consists of 4.4 million acres of public land spanning portions of east-central Arizona and west-central New Mexico, including a significant portion of Catron County, New Mexico.  In 1998 the FWS released the first 11 captive-reared Mexican wolves into the BRWRA.  By the end of 2006, an estimated 59 Mexican wolves lived in the BRWRA in New Mexico and Arizona.  According to Wildearth Guardians ("Wildearth"), by the end of June 2007, only 26 wolves were located through radio telemetry.  Compl., ¶ 32.[1]

The FWS regulates and controls the reintroduction of the Mexican wolf population pursuant to the ESA and 50 C.F.R. § 17.84(k).  It has also adopted and implemented 26 Standard Operating Procedures ("SOPs") as part of the "Service Approved Management Plan" referenced in the Mexican Wolf Final Rule, 50 C.F.R. § 17.84(k).  SOP 13 addresses the manner in which the FWS controls and responds to nuisance and problem wolf situations.  The FWS is primarily responsible for dealing with problem wolves, with limited exceptions allowing citizens to take

---

[1]  The Court notes that the Arizona Game and Fish Department reports at the end of October 2007, the population consisted of only 25 wolves with functional collars.  This report further states that other uncollared wolves are known to be associating with the collared wolves, as well as being separate from known packs.  *See* Mot. Prelim. Inj, Ex. 11.

2

action in the face of imminent danger.  *See* Mot. Dismiss, Ex. C (SOP 13).

According to the Board of County Commissioners for Catron County ("Commission"), "[t]he introduction [sic] Mexican Gray Wolf within the borders of Catron County has created an untenable situation where the citizens of Catron County live in constant fear of attack by wolves, and where citizens have to deal with the present impact of loss of income, property loss and damage, and increasing disruption of the normal functioning of government and communities." Mot. Dismiss, pp. 1-2.  On February 15, 2006, the Commission passed Resolution No. 33-2006, a Declaration of Catron County State of Economic and Agricultural Emergency arising from the reintroduction of the Mexican gray wolf.  *Id.* at Ex. F.

On February 7, 2007, in accordance with Resolution No. 33-2006 and pursuant to NMSA 1978, § 4-37-1, the Commission passed Ordinance No. 001-2007 ("Ordinance") based upon its finding that:

> the reintroduction and existence of the Mexican Gray Wolf within the boundaries of Catron County, New Mexico is injurious, detrimental and damaging to the County and its inhabitants; and, human interactions with habituated wolves have increased within the last twelve months; and, the reasonable man would view this as an imminent threat to human safety and welfare.

*Id.* at Ex. D.  The Ordinance established procedures "for immediate removal of habituated wolves that have caused or have a high probability of causing physical and/or psychological damage to children and other defenseless persons; and additional procedures. . . for the permanent removal of wolves that are habituated wolves, whether or not they have threatened persons."  *Id.* at Sec. 1. The Ordinance directed the Catron County Wolf Interaction Investigator ("CWII") to respond unilaterally to incidents involving wolves including, in part, directing the CWII to "trap," "pursue" and "permanently remove"  wolves within the BRWRA at the direction of the Commission.  *See*

3

*id.* at Secs. 2, 5 and 6.

On April 18, 2007, the Commission passed the Amended Catron County Ordinance No. 001-2007 ("Amended Ordinance"). *Id.* at Ex. A. The Amended Ordinance substantially amended the Ordinance by removing the provisions that previously authorized and directed the CWII to take unilateral action against wolves. *See generally id.* According to the Amended Ordinance, once the Commission identifies a problem wolf, it will then notify the FWS and request an "incidental take statement or to be an authorized person or for a special management plan, to authorize the 'take' of wolves." *Id.* at Sec. 3.

## II.  MOTION TO DISMISS

### A.    ARGUMENT

### 1.    Plaintiff's Claims

In the Complaint for Declaratory and Injunctive Relief filed July 25, 2007 [Doc. 1], Wildearth[2] claims that "[b]y adopting and implementing Catron County Ordinance 001-2007, Defendant Commission has both authorized the unlawful 'take' of an endangered species and attempted to 'take' an endangered species in violation of the ESA." Compl., ¶ 4. First, Wildearth asserts "Catron County may not properly promulgate an ordinance pursuant to its police powers if that ordinance is inconsistent with state or federal law or the state or federal constitution." *Id.* at ¶ 25. Therefore, Wildearth claims the Ordinance which authorizes the unilateral "take" of a wolf by the CWII at the direction of the Commission, violates and is preempted by federal law because such authority lies with the FWS. *Id.; see* 63 F.R. 1752, 1755

---

[2]  The Complaint was originally filed by the plaintiffs Forest Guardians and Sinapu. However, on March 24, 2008, this Court granted the plaintiffs' Motion to Amend Caption [Doc. 49], thereby changing the named plaintiff to Wildearth Guardians.

(1998) (ESA preempts conflicting local ordinance); 16 U.S.C. § 1535(f) (state law regarding the "take" of an endangered species may not be less restrictive than federal law); *see also* U.S. Const. art. VI, § 3cl.2 (supremacy clause).

Second, Wildearth claims the Commission has taken actual steps to "take" two Mexican wolves in violation of federal law.  Wildearth asserts the Commission sent multiple letters to the FWS demanding the immediate removal of the female wolf identified as AF924 and the male wolf identified as AM973.  *See* Compl., ¶¶ 39, 42; *see also* Resp., Exs. 1, 2, 3, 7, 8 & 10.  In addition to sending letters, Wildearth claims the Commission "directed the CWII to stalk and set one or more traps for this breeding pair [AF924 and AM973]."  Compl., ¶ 43.  According to Wildearth, in accordance with the Commission's directive, the CWII "did stalk and set one or more traps in an attempt to capture AF924 and/or AM973.  Those traps were left on the ground for approximately seven to 14 days."  *Id.* at ¶ 44; *see also* Resp., Exs. 4, 5, 6 & 10.

### 2.    Defendant's Claims

In its Motion to Dismiss [Doc. 8], the Commission claims this Court "does not have subject matter jurisdiction over the Plaintiffs' claims, as they lack standing and the claims are not justiciable."  Mot. Dismiss, p. 1.  First, the Commission argues the Amended Ordinance "substantially and substantively changed the old ordinance, removing all of the provisions that are now challenged by the Plaintiffs.  All of the actions that the Plaintiffs claim occurred pursuant to the old ordinance actually occurred following the Catron County Commission's vote on the amendment."  *Id.* at 5.  The Commission asserts the Amended Ordinance "is in accordance with both state and federal law."  *Id.*  Therefore, the Commission argues Wildearth's claims are moot because the Ordinance upon which they base their claims is no longer effective.  *See id.* at 14-15.

5

Second, the Commission argues Wildearth does not satisfy any of the three constitutional requirements for standing in light of the amendment to the Ordinance.  *Id.* at 11-12.

B.    **JURISDICTION**

This cases presents issues arising under the laws of the United States, and therefore is properly before the Court pursuant to 28 U.S.C. § 1331.  Additionally, the ESA expressly authorizes "citizen suits" in which "any person may commence a civil suit on his own behalf-- (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof." 16 U.S.C. § 1540(g).  "The citizen-suit provision abrogates the prudential component of the standing inquiry by allowing suits by 'any person.'"  *Coalition for Sustainable Res., Inc. v. United States Forest Serv.*, 259 F.3d 1244, 1250 (10th Cir. 2001) (citing *Bennett v. Spear*, 520 U.S. 154, 164-65, 137 L.Ed.2d 281, 117 S.Ct. 1154 (1997) ("any person" language in ESA negates zone-of-interest requirement for standing).  Therefore, in this case, Wildearth need only satisfy the constitutional requirements for standing for its claims under the ESA.

C.    **STANDARD OF REVIEW**

The Commission moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) alleging this Court lacks subject-matter jurisdiction as stated above.  The parties agree the jurisdictional challenge in this case concerns the facts upon which jurisdiction depends, citing *Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320 (10th Cir. 2002).  *See* Mot. Dismiss, p. 10; Resp., p. 3.  When the jurisdictional facts are challenged, a court does not presume the truthfulness of the allegations in the complaint.  *See Sizova*, 282 F.3d at 1324.  "A court has wide

discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995); *see also E.F.W. v. St. Stephen's Indian High School*, 264 F.3d 1297, 1303 (10th Cir. 2001) (following *Holt, supra*).  Consideration of evidence outside the pleadings does not generally convert a motion to dismiss to one for summary judgment under Fed. R. Civ. P. 56.  *See Sizova*, 282 F.3d at 1324 (citing *Holt*, 46 F.3d at 1003).

However, as Wildearth points out, there is an exception to this rule.  *See* Resp., p. 4.  A motion to dismiss may be converted to one for summary judgment when "the jurisdictional question is intertwined with the merits of the case."  *Sizova*, 282 F.3d at 1324 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)).  Subject matter jurisdiction and the merits of a case are considered intertwined "when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case."  *Id.*  Wildearth contends that "[b]ecause the 'resolution of the jurisdictional question' raised by the Commission 'requires resolution of an aspect of the substantive claim[s]' set forth by [Wildearth] in this case, the questions of subject matter jurisdiction and the merits of [Wildearth's] claims are intertwined, and thus defeat the general rule against conversion."  Resp., p. 4 (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).  Specifically, Wildearth argues the question of whether its claims are moot is intertwined with the issue of whether the Commission's actions towards Mexican wolves constitute an unlawful take allegedly authorized by the Ordinance.  Resp., p. 4.

The Court disagrees.  The Tenth Circuit instructs that "the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute.  Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an

7

aspect of the substantive claim." *Sizova*, 282 F.3d at 1324 (quoting *Pringle*, 208 F.3d at 1223

(citing *Wheeler, supra*)).  Here, the jurisdictional issue is whether Wildearth's claims regarding

the Ordinance are moot as a result of the amendment to the Ordinance.  However, Wildearth's

substantive claims that the Commission has acted unlawfully arise under the ESA and federal

preemption law.  *See* 63 F.R. at 1755; 16 U.S.C. § 1535(f).  Therefore, the Court declines to treat

the Commission's motion as one for summary judgment.

     **D.**     **ANALYSIS**

     **1.**     **Mootness**

     In this case, the Commission argues the complaint should be dismissed because the claims

regarding the Ordinance are moot as a result of the subsequent amendment to the Ordinance

which substantially altered its content and removed the challenged portions of the Ordinance.  *See*

Mot. Dismiss, pp. 5-6, 11, 14-15; *compare* Ex. A *with* D.  By contrast, Wildearth argues its

claims are *not* moot because the Ordinance remains in effect, despite the amendment thereto,

because the Commission has continued to take action in conformity with the Ordinance by

sending demand letters to the FWS and issuing a 24 Hour Notice of Intent to Remove Wolf

Durango AF924, which is consistent with the measures identified in Sections 5 and 6 of the

Ordinance. *See* Resp., pp. 1, 8-, *see also* Exs. 1-12.  Additionally, Wildearth claims the

Commission is acting pursuant to Sections 2, 5 and 6 of the Ordinance by directing the CWII to

"stalk," "trap," or "take" AF924 and/or AM973 without FWS approval as required by federal

law.  *See* Compl., ¶¶ 3, 4, 43, 44; Resp., pp. 2-3, 8-9, 11-12, Exs. 4-6.  According to Wildearth,

these actions, and the fact that the Ordinance was not expressly repealed (*see* Compl., ¶ 35;

Resp., pp. 1, 11), demonstrate that the Ordinance remains in effect and its claims concerning the

8

Ordinance are not moot.[3]  *Id.*  Therefore, Wildearth asks the Court to: 1) declare that the Ordinance is "superceded by the terms of the ESA and 50 C.F.R. § 17.84(k)" and "invalid;" and 2) enjoin the Commission from taking further action pursuant to the Ordinance.  *See* Compl., pp. 18-19 (Prayer for Relief, ¶¶ 3 & 6).

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (citing *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991)).  "Because 'parties have no legally cognizable interest in the constitutional validity of an obsolete statute,' a statutory amendment moots a case 'to the extent that it removes challenged features of the prior law.'"  *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001) (quoting *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) and *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000)).

---

[3]  Throughout Wildearth's response to the Motion to Dismiss, it claims the Ordinance remains effective because the Commission has continued to act under the purported authority of the challenged provisions.  *See* Resp., pp. 1, 3, 8, 11, 12.  However, in Plaintiff's Reply in Support of Motion for Preliminary Injunction [Doc. 39], Wildearth asserts for the first time that the Ordinance and Amended Ordinance must be read together, with the Amended Ordinance invalidating the Ordinance only with respect to "those earlier-adopted provisions with which it is in direct conflict."  Reply Mot. Prelim. Inj., p. 2.  Wildearth set forth a three-page argument in support of this new proposition citing case law previously unmentioned.  *See id.* at 2-4.  Wildearth's new argument raised for the first time in a reply brief to another pending motion is improper– a fact about which Wildearth appears all too aware as evidenced by its discussion of this issue in its Memorandum in Opposition to Defendant's Motion to Strike or Alternatively to Disqualify [Doc. 35].  *See* Resp. Mot. Strike, pp. 5-6 (citing *Silverton Snowmobile Club v. U.S. Forest Service*, 433 F.3d 772, 783 (10th Cir. 2006); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998); *Coleman v. BG Maintenance Mgmt. of Colorado*, 108 F.3d 1199, 1205 (10th Cir. 1997); *Bowdry v. United Airlines, Inc.*, 58 F.3d 1483, 1490 (10th Cir. 1995); *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir. 1994)).  Nevertheless, the Court finds the Amended Ordinance and Ordinance cannot be interpreted reasonably together.  An effort to do so results in confusion and internal conflict.  For example, Section 4 of the Amended Ordinance, as discussed below, only authorizes the CWII to take action pursuant to FWS authorization or Section 1 or 2 of the Amended Ordinance.  These limitations would have no meaning if the CWII could also act unilaterally as previously allowed by the challenged sections of the Ordinance.  *Compare* Mot. Dismiss, Ex. A *with* Ex. D.

In this case, the Court finds that the Amended Ordinance supersedes the Ordinance and substantively alters its contents.  First, the Amended Ordinance expressly states its purpose "is to amend Catron County Ordinance No. 001-2007."  *See* Mot. Dismiss, Ex. A.  Second, the sections in the Amended Ordinance significantly and substantively alter the same-numbered sections in the Ordinance.  Specifically, concerning the contested portions of the Ordinance, the following changes were made:

Sections 2, 5 and 6 of the Ordinance state, in relevant part:

SECTION 2.  The Catron County Wolf Interaction Investigator (hereinafter referred to as "CWII") shall assume the following actions in response to incidents involving habituated wolves in proximity to humans or human use areas.

\*\*\*

2.5     If a wolf or wolves are still present, the CWII will respond by using the following stalking, threatening, attacking or assaulting behavior interruption methods:
  a.     Hazing/Harassing
  b.     Guarding
  c.     *Trapping*

\*\*\*

SECTION 5.  If evidence of physical and/or psychological effects is/are present on a human as documented by medical and/or mental health professionals, the CWII shall:

\*\*\*

5.2     After notification by the CWII and a vote of approval by the Catron County Commission, the Commission shall issue a Dispatch Order and demand the immediate removal of the identified wolf from the Mexican Gray Wolf Recovery Program.

\*\*\*

5.3     If the identified wolf is not removed within 24 hours, *the Catron County Commission shall direct the CWII to remove the animal immediately* through the Dispatch Order.  The Dispatch Order shall permit the CWII to pursue the wolf until it is *permanently removed* from Catron County.

10

\*\*\*

SECTION 6.  If evidence of physical effects on a human is not visible, the CWII shall:

\*\*\*

6.3.  After three such incidents and separate notifications regarding the same habituated wolf, and if the above agencies have not acted within 24 hours of the third notification to remove the wolf from the Mexican Gray Wolf Recovery Program, the Catron County Commission may issue a Dispatch Order for that wolf.

*Id.* at Ex. D (emphasis added).

In contrast, Sections 2 and 3 of the Amended Ordinance state, in relevant part:

SECTION 2.  Procedures are also established for demanding removal of problem wolves that are habitually causing physical or psychological effects on humans.

SECTION 3.  The Catron County Commission and/or the Catron County Wolf Interaction Investigator (hereinafter referred to as "CWII") *shall petition the FWS for an incidental take statement or to be an authorized person or for a special management plan*, to authorize the "take" of wolves.

*Id.* at Ex. A (emphasis added).  Furthermore, Section 4 of the Amended Ordinance authorizes the CWII only to act pursuant to FWS authorization or Section 1 or Section 2 of the Amended Ordinance.  *Id.*  Finally, with respect to the Commission's demands for removal, Sections 7 and 8 of the Amended Ordinance mandate that such demands will be in the form of a "Dispatch Order," which is defined as a "[d]irection issued by the Catron County Commission requesting an incidental take permit or other authorization to 'take' a wolf within the borders of Catron County."  *Id.*  Consequently, the provisions complained of by Wildearth that authorize the Commission to direct the CWII to "take" a Mexican wolf without the approval of the FWS do not exist in the Amended Ordinance.  *See id.*

The argument that the Commission continues to take action under color of law pursuant

11

to the now-obsolete Ordinance is not persuasive in light of the substantive changes made to the Ordinance. The Court further notes there is a distinction between acting *pursuant* to an ordinance, and acting *consistent* with the ordinance. Actions consistent with an obsolete ordinance may not be lawful, but are not presumed to be taken under color of law as argued by Wildearth here. Nevertheless, because the Amended Ordinance has removed the challenged features of the Ordinance, Wildearth's claims concerning the validity of the Ordinance are moot–specifically its "Third Claim for Relief." *See Camfield, supra; see also Wyoming v. U.S. Dept. Agriculture*, 414 F.3d 1207 (10th Cir. 2005) (finding challenged portions of "Roadless Rule" no longer exist, therefore claims are moot). Consequently, this Court does not have jurisdiction to declare the Ordinance superseded and invalid, or to enjoin the Commission from taking action pursuant to the Ordinance.

The Commission takes the position that the amendment to the Ordinance moots *all* of Wildearth's claims. *See* Mot. Dismiss, p. 13; Reply, pp. 11-12. However, a review of the complaint shows that Wildearth has also alleged the Commission's actions violate the ESA and 50 C.F.R. § 17.84(k) by directing the CWII to trap or take AF924 and AM973, and by claiming such action was attempted by the CWII. *See* Compl., ¶¶ 3, 43, 44. While these claims are somewhat confusingly intertwined in the complaint with Wildearth's claims concerning the validity of the Ordinance, the Court finds that the requested relief is instructive in distinguishing between the claims. Specifically, Wildearth has requested this Court: 1) declare the Commission is violating Section 9(a)(1)(B) of the ESA by "authorizing and directing the CWII to take, or attempt to take, one or more Mexican gray wolves" and by "taking, or attempting to take one or more Mexican gray wolves;" 2) enjoin the Commission from "continuing to violate the ESA by continuing to

12

authorize and direct the CWII or any other person to engage in activities that cause, or attempt to

cause, the unlawful and unauthorized take of Mexican gray wolves;" and 3) enjoin the

Commission from "continuing to violate the ESA by continuing to vote for and direct activities

that cause, or attempt to cause, the unlawful and unauthorized take of Mexican gray wolves." *Id*.

at 18-19 (Prayer for Relief, ¶¶ 1, 2, 4 & 5).  This requested relief is separate and distinct from the

declaratory and injunctive relief sought by Wildearth concerning the Ordinance. *See id.* at ¶¶ 3, 6;

*see also Bennett v. Spear*, 520 U.S. 154, 167-68, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)

(courts presume "general allegations embrace those specific facts that are necessary to support the

claim" for purposes of a motion to dismiss).  Consequently, the Court finds Wildearth's claims

that the Commission has taken, attempted to take, or authorized and directed the CWII to take,

or attempt to take, one or more Mexican gray wolves in violation of the ESA are not moot.

    2.    **Standing**

    Next, the Commission argues Wildearth lacks standing because its claims do not satisfy

the constitutional requirements of injury-in-fact, causation and redressability. *See Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations

omitted).  Concerning injury-in-fact, the Commission couches its argument in terms of the

Amended Ordinance, claiming Wildearth has failed "to allege how [a] healthy and viable wolf

population has been harmed by actions related to Catron County's Amended Ordinance."  Mot.

Dismiss, p. 12.  Further, the Commission argues Wildearth has only alleged a "risk of harm– harm

which is both conjectural and hypothetical" claiming any such risk does not exist because the

provisions in the Ordinance creating the risk have been amended. *Id.* at 12-13.

    First, the Commission's argument only speaks to those claims that are now moot.  In any

event, the Court finds Wildearth has sufficiently alleged an injury-in-fact by claiming the

Commission has taken steps to trap and remove AF924 and AM973.  Because these Mexican

wolves are endangered, any effort to remove them from the wild, even if unsuccessful, creates a

risk of harm.  *See Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 784 (9th

Cir. 1995) ("It is clearly conceivable that one can inflict great harm on a protected species by

creating an imminent threat of harm to that species.").  Wildearth, an environmental advocacy

group, has alleged an injury to its members and staff as a result of the alleged actions taken by the

Commission.

Wildearth is an organization "dedicated to the preservation of biodiversity and natural

systems within our National Forests" and "to the restoration and protection of native wildlife,

such as wolves."  Compl., ¶¶ 9-10.  Wildearth has identified the success of the Mexican wolf

reintroduction program as one of its "highest organizational priorities" and claims an interest in

the "health of individual Mexican gray wolves in the wild, a viable Mexican gray wolf wild

population, and the success of the Mexican gray wolf reintroduction and recovery program."  *See

id.* at ¶ 9; Resp., p. 15; *see also* Declarations of John Horning [Doc. 10], David Parsons [Doc.

11], Jean Ossorio [Doc. 12], Robert Edward [Doc. 13] and Dr. Malcolm MacPherson [Doc. 14].

The interests in the Mexican wolf alleged by Wildearth members are professional, scientific,

educational, recreational and esthetic.  Resp., p. 15.   The Supreme Court has made clear that

environmental groups with interests such as these have a "cognizable interest for purpose of

standing."  *Lujan*, 504 U.S. at 562-63 ("[T]he desire to use or observe an animal species, even for

purely esthetic purposes, is undeniably a cognizable interest for purpose of  standing." (citation

omitted)); *see also Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073 (9th Cir. 2001)

(nonprofit organization seeking to protect threatened species has interest in seeing statute followed by FWS); *Defenders of Wildlife, Friends of Animals & Their Environment v. Hodel*, 851 F.2d 1035 (8th Cir. 1988) (physical damage to place which individual personally visits or to animals that he actually observes is type of injury sufficient to confer standing under Constitution). Therefore, Wildearth has satisfied the first prong of the test for standing.

Second, the Commission claims Wildearth does not "allege any actions by Catron County that would prevent the wolf population from being healthy or viable." Mot. Dismiss, p. 13. Again, the Commission relies upon the Amended Ordinance in support of its contention. However, the Court rejects this argument. Wildearth has alleged specific actions taken by the Commission in violation of the ESA resulting in harm, or a risk of harm, to the Mexican wolf population. *See* Compl, ¶¶ 3, 43, 44; *see also Rosboro, supra.* Therefore, Wildearth has satisfied the second prong of the test for standing.

Finally, the Commission argues Wildearth's claims are not redressable because the Ordinance is no longer in effect, and thus the relief requested by Wildearth cannot be given by this Court. With respect to Wildearth's claims regarding the validity of the Ordinance, the Commission is correct. As discussed above, the Court does not have jurisdiction to declare the Ordinance superseded or invalid, or to enjoin the Commission from acting pursuant to the Ordinance because these claims are moot. However, with respect to Wildearth's remaining claims concerning specific actions allegedly taken by the Commission to take or attempt to take Mexican gray wolves, a favorable decision by this Court could redress those injuries. The Court has authority to grant the declaratory, injunctive and monetary relief sought by Wildearth with respect to these claims. *See* 16 U.S.C. §§ 1540(a), (e) and (g); 28 U.S.C. §§ 2201 and 2202. Therfore,

this Court finds Wildearth has standing to bring these claims.

### III.  PRELIMINARY INJUNCTION

#### A.    ARGUMENT

Wildearth requests this Court issue a preliminary injunction to enjoin the Commission:

> from directing the Catron County Wolf Interaction Investigator ("CWII") or any other person to "take," by trapping or otherwise harming, or attempting to trap or otherwise harm, any endangered Mexican gray wolf (*Canis lupus baileyi*) in violation of Section 9 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a)(1)(B), and the Final Rule for the "Experimental, Nonessential" Population of Mexican Gray Wolves, 50 C.F.R. § 17.84(k), pending a final resolution of this case.

Mot. Prelim. Inj., p. 1.  Wildearth argues "the Mexican gray wolf species in the wild will suffer immediate and irreparable harm unless Defendant Commission is enjoined from taking one or more endangered Mexican gray wolves pending further review of the merits by this Court."  *Id.*  Wildearth claims the Commission has attempted to take Mexican gray wolves and began "current efforts" to take one or more wolves on November 7, 2007, by notifying the FWS of its intent to trap AM973.  Memo. Prelim. Inj., p. 1.  Wildearth further claims the CWII is "ready to set one or more wolf traps as soon as the targeted wolf's [AM973] radio telemetry device indicates that he has reappeared in the vicinity of a ranch residence in Catron County."  *Id.*  Therefore, Wildearth seeks to enjoin the "Commission's ongoing unlawful implementation of its Ordinance and all of its actions directed at taking Mexican gray wolves in violation of the ESA and the Supremacy Clause of the U.S. Constitution."  *Id.* at 2.

#### B.    STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy, and should not be issued unless the movant's right to relief is "clear and unequivocal."  *Dominion Video Satellite, Inc. v. Echostar*

*Satellite Corp.*, 269 F.3d 1149, 1154 (10ᵗʰ Cir. 2001) (citation omitted).  In order to obtain a preliminary injunction, the moving party must establish:  (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.  *See Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065-66 (10ᵗʰ Cir. 2001).  "It is the movant's burden to establish that each of these factors tips in his or her favor."  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10ᵗʰ Cir. 2003) (citing *Kikumura v. Hurley*, 242 F.3d 950, 955 (10ᵗʰ Cir. 2001)).

The Tenth Circuit has adopted a modified requirement as to the likelihood of success.  If the movant has established the other three requirements for a preliminary injunction, then the movant may satisfy the first requirement "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *See Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1195 (10ᵗʰ Cir. 1999) (citing *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10ᵗʰ Cir. 1995)).

Additionally, for certain preliminary injunctions, "the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction."  *Dominion Video*, 269 F.3d at 1154 (citing *Kikumura, supra*). The heightened burden applies to preliminary injunctions that:  (1) disturb the status quo, (2) are mandatory rather than prohibitory, or (3) provide the movant substantially all the relief it could feasibly attain after a full trial on the merits.  *Id.* at 1155.  The Tenth Circuit disfavors such injunctions.  *Id.* (citing *SCFC ILC, Inc. v. Visa, USA Inc.*, 936 F.2d 1096, 1098 (10ᵗʰ Cir. 1991)).

17

The parties do not argue, nor does the Court find, that the heightened burden applies in this case. Therefore, the Court will analyze Wildearth's motion pursuant to the traditional standard.

> **C.      ANALYSIS**

The Commission argues the Court should deny Wildearth's request for a preliminary injunction for the following reasons: 1) the Court does not have the power to enter such an injunction in this litigation;" 2) the request for an injunction is "overly broad;" and 3) Wildearth does not satisfy the four requirements for obtaining an injunction.  Resp. Prelim. Inj., pp. 14-17. The Court considers each of these arguments in turn.

> **1.      Jurisdiction**

First, the Commission states Wildearth seeks an injunction for conduct not asserted in the Complaint, and therefore the Court does not have jurisdiction to grant the injunction.  *Id.* at 14-15.  Specifically, the Commission argues that the Complaint only asks the Court to declare the Ordinance invalid and enjoin the Commission from taking action pursuant to it– issues now moot. *Id.* at 15.  In contrast, the Commission argues the injunction sought by Wildearth seeks to enjoin "actions directed at taking Mexican gray wolves in violation of the ESA and the Supremacy Clause of the U.S. Constitution."  *Id.* (quoting Memo. Prelim. Inj., p. 2). The Commission claims Wildearth's request for injunction prohibiting the Commission from violating the ESA is not in the Complaint.  *Id.* at 16.  However, this is assertion is wrong.  The Complaint expressly asks the Court for: 1) "[a]n order enjoining Defendant Commission from continuing to violate the ESA by continuing to authorize and direct the CWII or any other person to engage in activities that cause, or attempt to cause, the unlawful and unauthorized take of Mexican gray wolves;" and 2) [a]n order enjoining Defendant Commission from continuing to violate the ESA by continuing to vote

18

for and direct activities that cause, or attempt to cause, the unlawful and unauthorized take of

Mexican gray wolves."  Compl., pp. 18-19 (Prayer for Relief, ¶¶ 4, 5).

**2.    Overly Broad Request**

Second, the Commission claims the injunction sought by Wildearth is "overly broad"

because it mandates compliance with the ESA and Supremacy Clause– both of which "are subject

to a great deal of interpretation and have an enormous corresponding body of law."  Resp. Prelim.

Inj., p. 16.  The Commission contends that if the requested injunctive relief is granted, the

injunction would be "confusing not only for Catron County, but also could lead to a great deal of

litigation over the scope of the injunction, since it is likely that the Plaintiffs would have a different

interpretation of 'compliance with' the ESA and the Supremacy Clause than would Catron

County."  *Id.* at 16-17.

The Court finds this argument compelling.  Federal Rule of Civil Procedure 65(d) provides

in part: "Every order granting an injunction. . . shall set forth the reasons for its issuance; shall be

specific in terms; [and] shall describe in reasonable detail, and *not* by reference to the complaint or

*other document*, the act or acts sought to be restrained."  (Emphasis added).  The Tenth Circuit

declared this language is "mandatory," explaining the reason for the proscription is to protect

"those who are enjoined by informing them of the specific conduct regulated by the injunction and

subject to contempt."  *Consumers Gas & Oil v. Farmland Indus.*, 84 F.3d 367, 371 (10th Cir.

1996) (citation omitted).  The Commission correctly asserts that the ESA allows citizens to

"take" a wolf in certain limited situations.  Resp. Prelim. Inj., p. 17.  The legality of such a take is

fact-specific and must be decided on a case-by-case basis.  Therefore, an order generally enjoining

action in violation of the ESA is subject to conflicting interpretations and confusion.  *See*

*Consumers Gas & Oil, supra.* Furthermore, given the tenor of this lawsuit and the arguments currently before the Court regarding the interpretation of the Ordinance, it is reasonable to believe virtually any action taken by the Commission concerning the Mexican wolves would draw fire from Wildearth resulting in more litigation over the nature and breadth of the injunction. These problems can and should be avoided by denying the request for an injunction. *See* Fed. R. Civ. P. 65(d); *Consumers Gas & Oil, supra.*

### 3.      Requirements for Preliminary Injunction

Finally, in addition to Plaintiff's overly broad request, the Court also finds Wildearth's right to an injunction is neither clear nor unequivocal. *See Dominion Video*, 269 F.3d at 1154. Wildearth has failed to demonstrate imminent or irreparable harm by the Commission. *See Leavitt*, 256 F.3d at 1065-66. Wildearth claims that if the Commission is "not enjoined from acting, the Commission will imminently attempt to remove AM973 if and when his location becomes known." Memo. Prelim. Inj., p. 21. Furthermore,"[i]n addition to attempts to trap AF924 and AM973, Defendant Commission will likely also attempt to trap other wolves in the future." *Id.* According to Wildearth, "each time a wolf is removed from the wild, the overall number of individuals decreases, leaving the wild population incrementally less viable." *Id.* at 14.

This Court recognizes the significant and irreparable injury caused by the removal of an endangered species such as the Mexican wolf from the wild. Through the passage of the ESA, Congress has made clear that endangered species must be protected and preserved. The Court is disturbed by the significant reduction in the number of Mexican wolves that has occurred within the last two years, as well as the mysterious disappearance of AM973. Nevertheless, Wildearth has failed to sufficiently demonstrate that the Commission is currently undertaking a course of

20

action that creates a risk of imminent or irreparable harm to the Mexican gray wolves.

"To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman*, 348 F.3d at 1189 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). "Irreparable harm is not harm that is 'merely serious or substantial.'" *Id.* (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (quoting *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976))). "The party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (citations omitted).

In this case, the Ordinance with the allegedly offensive language is obsolete, so there is no standing ordinance authorizing a violation of the ESA. Additionally, the facts show the FWS removed AF924 in July 2007 (*see* Mot. Dismiss, Ex. B), and AM973 has been missing since early November 2007. *See* Mot. Prelim. Inj., Exs. 5 & 11. No further unlawful action has been alleged concerning any other Mexican wolves. By its own admission on April 11, 2008, Wildearth said that "[s]ince the wolf (AM973) that was the subject of [Wildearth's] Motion for Preliminary Injunction has disappeared and there have been no indications that the wolf is likely to reappear any time soon, as of this moment [Wildearth] is not aware of any imminent trapping orders or actions by the Commission." Pl.'s Resp. Mot. Stay, p. 1 [Doc. 52]. Furthermore, the Court is not convinced that the letter from the Commission notifying the FWS of its intent to trap AM973 constitutes a standing order to remove AM973 if he reappears. *See* Mot. Prelim. Inj., Ex. 4, p. 2. Finally, according to Ed Wehrheim, the CWII only "scouted" AF973 and took no action to remove it; the traps are "locked down and not in use;" and the Commission has no intention of taking any action pursuant to the challenged Ordinance. Wehrheim Dec., ¶¶ 23, 41, 43 [Doc.

28].  The sum of these findings support the conclusion that Wildearth has not adequately

demonstrated a risk of irreparable harm.  *See Heideman*, 348 F.3d at 1189.  Therefore, because

Plaintiff fails to satisfy this requirement necessary to obtain a preliminary injunction, it need not

consider whether it has satisfied the other three requirements.  *See Leavitt, supra.*

### IV.  MOTION TO STRIKE OR ALTERNATIVELY TO DISQUALIFY

Defendant requests this Court strike the Declaration of Melissa Hailey in Support of

Plaintiffs' Motion for Preliminary Injunction [Doc. 18], or in the alternative, disqualify Ms. Hailey

as counsel.  In support of its motion, Defendant argues the Hailey Declaration violates N.M. R.

Prof. Conduct 16-307 which advises:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a
> necessary witness except where:
> (1)     The testimony relates to an uncontested issue; or
> (2)     The testimony relates to the nature and value of legal services rendered in
>         the case.

*See* Mot. Strike, p. 2.  Defendant further cites to *United States v. Berger*, 251 F.3d 894, 906-07

(10th Cir. 2001), in which the Tenth Circuit explained an attorney acting as both an advocate and

witness may lead to confusion about whether the statement of the advocate-witness should be

considered proof or an analysis of the proof.  *Id.*  Defendant also cites the New Mexico Supreme

Court test for disqualification outlined in *Chappell v. Cosgrove*, 916 P.2d 836, 840 (N.M. 1996),

in which it held a party seeking disqualification must show:

> (1)     the attorney's testimony is material to an issue in the case;
> (2)     the evidence to be elicited from the attorney's testimony is not available
>         from another source; and
> (3)     the attorney's testimony is potentially prejudicial to his client's case.

*See id.* at 3.  Finally, in its reply, Defendant claims the Hailey Declaration is hearsay and double

hearsay, and thus not proper for consideration pursuant to Fed. R. Evid. 802.  *See* Reply Mot.

Strike, p. 6.

While this Court questions the practice of an attorney acting as both advocate and witness in the same proceeding, the facts before the Court at this time do not support disqualification of Ms. Hailey as counsel.  As stated by Plaintiff, the Hailey Declaration does not appear to prejudice its case– the third prong of the *Chappell* test.  916 P.2d at 840.  Furthermore, the Court is not confused by the Hailey Declaration.  *See Berger, supra.*  Additionally, although considered, the Declaration does not affect the Court's decision on Plaintiff's Motion for Preliminary Injunction. Moreover, the New Mexico Rule of Professional Conduct is not an evidentiary rule, but instead is a rule by which Ms. Hailey must conduct herself during the course of this lawsuit.  If Ms. Hailey intends to continue as a witness in this matter, then she should heed the advise of *Berger*, and consider whether it would be wiser to have different counsel proceed to trial "to preserve the ability of counsel to remain objective, and to avoid any potential conflict of interest between the attorney and the client."  251 F.3d at 906-07.  Finally, the Court notes that the procedures for granting a preliminary injunction are "less formal" and take into consideration "evidence that is less complete than in a trial on the merits."  *Heideman*, 348 F.3d at 1188 (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).  The Federal Rules of Evidence do not apply to preliminary injunction hearings and hearsay evidence may be considered. *Heideman,* 348 F.3d at 1188 (citations omitted).  Therefore, Defendant's argument that the Hailey Declaration should not be considered because it contains hearsay is rejected.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss [Doc. 8] is **GRANTED IN PART** with respect to Wildearth's claims concerning the validity of the Ordinance.  Therefore, Wildearth's Third Claim for Relief and its third and sixth Prayer for Relief

are dismissed as moot.  Furthermore, to the extent that Wildearth's remaining two claims allege the Commission acted "under the purported authority" of the Ordinance, these claims are also denied as moot.

      **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **DENIED IN PART** with respect to Wildearth's remaining claims that the Commission's actions violate the ESA and 50 C.F.R. § 17.84(k).  These claims, and the prayers for relief requested thereto remain viable.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction [Doc. 16] and Defendant's Motion to Strike or Alternatively to Disqualify Melissa Hailey [Doc. 23] are **DENIED**.

      Dated this 30th day of September, 2008.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE